IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| KIA LYN FADEL HODGSON, KRISTIN LOUISE FADEL, DOUGLAS KELLY FADEL and KARA FADEL BURNETT, trustees of the Rock Manor Trust,<br><br>Plaintiffs,<br><br>v.<br><br>FARMINGTON CITY,<br><br>Defendant. | MEMORANDUM DECISION<br><br>Case No. 1:15-cv-00125<br><br>Magistrate Judge Dustin Pead |

## I.  INTRODUCTION

The parties in this case consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.  (ECF. No. 13.)  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Currently pending before the court is Defendant Farmington's City's ("Farmington") motion to dismiss Plaintiff Kia Lyn Fadel Hodgson, Kristin Louise Fadel, Douglas Kelly Fadel and Kara Fadel Burnett's (collectively "Plaintiffs") complaint for failure to state a claim upon which relief can be granted pursuant to federal rule of civil procedure 12(b)(6).  (ECF No. 14.)  *See* Fed. R. Civ. P. 12(b)(6).

## II.  STANDARD OF REVIEW

**Motion To Dismiss Pursuant To Federal Rule of Civil Procedure 12(b)(6)**

When considering a motion to dismiss under Rule 12(b)(6), all well pled factual allegations are accepted as true and viewed in a light most favorable to the non-moving party.


*Gadd v. South Jordan City,* 2016 U.S. Dist. LEXIS 35089 *6 (*citing David v. City & Cnty. of Denver,* 101 F.3d 1344, 1352 (10th Cir. 1996)).

To withstand dismissal, a plaintiff must plead both a viable legal theory and provide "enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Plaintiff's reliance upon "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action will not suffice.'" *Id*.  In general, "[d]etermining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 St. Ct. 1937, 173 L.Ed. 2d 868 (2009).

### Taking Judicial Notice Of Matters Outside The Pleadings

A court is required to convert a motion to dismiss to a motion for summary judgment it if considers matters that are outside the scope of the pleadings.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56"). However, a court is not required to convert a motion to summary judgment based upon its consideration of public records for which the court takes judicial notice.  *See Tal v. Hogan,* 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006) ("facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment."); *see also United States v. Ahidley,* 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007) (taking notice of another court's publicly filed records "concerning matters that bear directly upon the disposition of the case at hand"); *Van Woudenberg ex. Rel. Foor v. Gibson,* 211 F.3d 560, 568

(10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson,* 248 F.3d 946, 955 (10th Cir. 2001) (court may "take judicial notice of its own files and records, as well as [other] facts which are a matter of public record."); *St. Louis Baptist Temple v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system if those proceedings have a direct relation to matters at issue.") Public records may be "considered to show their contents, not to prove the truth of matters asserted therein." *Tal* at 1264 n. 24 (*citing Oxford Asset Mgmt., Ltd v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002).

### III. BACKGROUND[1]

This case stems from Farmington City's April 1, 2015, demolition of Plaintiffs' structure (the "structure") located at 119 West 1150 South in Farmington, Utah. The structure is described as approximately 20 feet high, "trapezoidal in shape, with dimensions of approximately 30 feet in length, with widths of approximately 10 feet front and 16 feet rear." (ECF No. 2, ¶8.) As of 1963 the structure "has been used only as a sign structure and not a barn . . .and the interior remained vacant thereafter and was reconstructed without a roof." (*Id.*) During a wind storm, the north face of the trapezoidal sign structure was separated from the structural supports, but the damage was later reconstructed and repaired. (*Id.*)

Prior to demolition, Farmington's actions were administratively and judicially

---

[1]For purposes of Farmington's motion to dismiss, the court accepts as true the facts set forth in Plaintiffs' complaint and views them in a light most favorable to Plaintiffs. *See Parks v. Watts,* 2016 U.S. App. LEXIS 3444, *4 (10th Cir. Feb. 24, 2016).

reviewed by Farmington's City Board of Appeals, Utah's Second District State Court and the Utah Court of Appeals. These actions bear directly on the issues here and the court takes judicial notice of the following matters of public record ("record of underlying litigation"). (ECF No. 15; *Affidavit of Robert Keller*); Fed. R. Civ. P. 44; Fed. R. Evid. 201.

1. On June 27, 2012, Farmington's City Building Official issued a "Notice and Order to Repair or Demolish Building" ("Notice and Order"). (ECF No. 15-2, p. 10-11.) The Notice and Order lists conditions and defects that qualifying the structure as a "Dangerous Building" pursuant to the Uniform Building Code for the Abatement of Dangerous Buildings. (*Id.*) The Notice and Order requires Plaintiffs "to repair or demolish the structure in accordance with applicable provisions of the Code." (*Id.*)

2. Plaintiffs appealed the Notice and Order to Farmington City's Board of Appeals (the "Board"). On September 19, 2012, the Board held a hearing and took testimony on Plaintiffs' appeal. (ECF No. 15-1, pgs. 83-111.) On October 3, 2012, the Board issued a decision denying the appeal and affirming "the decision of the Building Official that the structure . . . is a 'dangerous building' under the provisions of the Uniform Building Code for the Abatement of Dangerous Buildings. . . as adopted by Farmington City." (ECF No. 15-1, p. 8-9.)

3. On October 25, 2012, Plaintiffs filed a Petition for Review of the Board's decision in the Second Judicial District for the State of Utah ("State District Court"). (ECF No. 15-1, p. 44.) On June 14, 2013, the State District Court granted summary judgment in favor of Farmington concluding there was "substantial evidence in the record to support the decision of the Farmington City Board of Appeals and the decision was not arbitrary, capricious or illegal." (ECF No. 15-2, p. 210-211.)

4. Plaintiffs appealed the State District Court's ruling, and on August 7, 2014, the Utah Court of Appeals issued a decision affirming the State District Court's Order. (ECF No. 15-3, p. 12-21); *Hodgson v. Farmington City*, 2014 UT App 188, 334 P.3d 484.

5. On August 12, 2014, Plaintiffs delivered a "Request for Approval of Height Adjustment to a Nonconforming Sign Structure" (the "Request") seeking approval from Farmington for "a height adjustment of the nonconforming sign". (ECF No. 15-3, p. 66.) On September 11, 2014, Farmington denied Plaintiffs' Request. (ECF No. 15-3, p. 72.)

6. On September 12, 2014, Farmington filed a motion in the State District Court seeking to proceed with demolition of the structure. (ECF No. 15-3, p. 25.)

7. On November 24, 2014, the State District Court entered an Order allowing demolition of the structure and awarding costs to Farmington. (ECF No. 15-3, p. 143-144.)

8. On November 25, 2014, Plaintiffs appealed the State District Court's Order to the Utah Supreme Court. (ECF No. 15-3, p. 155-156.) The appeal was transferred to the Utah Court of Appeals (ECF No. 15-3, p. 161-162), and on February 26, 2015, the appellate court issued a decision affirming the State District Court's Order allowing for demolition of the structure. (ECF No. 15-3, p.171-175); s*ee Hodgson v. Farmington City*, 2015 UT App 43; 345 P.3d 750.

9. On April 1, 2015, Farmington demolished the structure and invoiced Plaintiffs for $2,239.14 in demolition costs. (ECF No. 2, ¶7.)

## IV. FARMINGTON'S MOTION TO DISMISS

Farmington moves for dismissal based upon Plaintiffs' failure to state a claim upon which relief can be granted. (ECF No. 14); Fed. R. Civ. P. 12(b)(6). Plaintiffs' complaint appears to allege violations of civil rights, the United States Constitution and Utah state municipal law. (ECF No. 2, ¶¶ 9-15.) As relief, Plaintiffs seek monetary damages or, in the alternative, the "rebuilding, relocation and height-adjustment" of the demolished structure. (ECF No. 2, p. 4.)

As set forth herein, the court addresses each of Plaintiffs' causes of action.

**1. Plaintiffs' Section 1983 Claim**

Plaintiffs assert a civil rights violation against Farmington pursuant to 42 U.S.C. § 1983 ("Section 1983").[2] In order to bring a claim under Section 1983 Plaintiffs "must allege that some

---

[2] Section 1983 states the following:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory. . . subjects, or causes to be subjected, any citizen of the United State or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

5

person has deprived [them] of a federal right," and "the person who has deprived [them] of that right acted under color of state or territorial law." *Gomez v. Toledo,* 446 U.S. 635, 640 100 S. Ct. 1920, 64 L.Ed. 2d 572 (1980). Plaintiffs appear to allege that Farmington, acting under color of law, deprived them of their right to substantive due process. *See* U.S. Const. Amend. XIV, § 1. The substantive due process doctrine protects fundamental interests and "ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co. v. Santa Fe City Council,* 226 F. 3d 1207, 1210 (10th Cir. 2000).[3] In general, substantive due process claims are "founded upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Graves v. Thomas,* 450 F.3d 1215, 1220 (10th Cir. 2006) (*citing Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998)).

    Substantive due process protects fundamental rights created by the Constitution. *Highland Dev., Inc. v. Duchesne Cnty.,* 505 F. Supp. 2d 1129, 1154 (D. Utah 2007) (*citing Greenbriar Village, L.L.C. v. Mountain Brook City*, 345 F. 3d 1258, 1262 (11th Cir. 2003)). Here, Plaintiffs fail to plead that Farmington interfered with a fundamental interest protected by the substantive due process doctrine. Property and development rights similar to the ones arguably at issue here are created under state law, not the Constitution, and are not considered to be the type of fundamental rights necessary to implicate substantive due process protections. *Id;*

---

      Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

    [3]Procedural due process, on the other hand, "ensures the state will not deprive a party of property without engaging fair procedures to reach a decision. . . ." *Id.*

*see also Graves v Thomas*, 450 F.3d 1215, 1220 (10th Cir. 2006) ("Substantive due process claims are not based on state law but are founded upon deeply rooted notions of fundamental personal interests derived from the Constitution") (internal quotation and citation omitted)).[4]

Further, even assuming Plaintiffs alleged interference with a fundamental right, Plaintiffs fail to plead conduct that "shocks the conscience." *See Ruiz v. McDonnell,* 299 F.3d 1173, 1183 (10th Cir. 2002). The "ultimate standard for evaluating a substantive due process claim is whether the challenged government action 'shocks the conscience' of federal judges." *Id.* at 1183 (*citing Ulrig v. Harder,* 64 F.3d 567, 573 (10th Cir. 1995); *see also Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir. 1999) ("Any substantive due process claim must represent more than an ordinary tort to be actionable under § 1983, and must shock the conscience.")). Even generously interpreting Plaintiffs' complaint to allege that Farmington improperly demolished the structure without an opportunity to relocate or repair does not give rise to the high level of conscious shocking or egregious behavior required to support a substantive due process violation. *See Moore v. Guthrie,* 438 F.3d 1036, 1040 (10th Cir. 2006) (internal citations and quotation omitted) ("plaintiff must do more than show that the government actor intentionally or recklessly cause injury to the plaintiff by abusing or misusing government power.").[5]

---

[4] Additionally, Plaintiffs do not maintain that Farmington's actions in this case were unconstitutionally irrational or arbitrary. *Higland Dev. Inc.,* 505 F. Supp 2d at *1156; But cf. McKinney v. Pate*, 20 F. 3d 1550 (11th Cir. 1994) (en banc) (even if plaintiff alleges arbitrary and irrational actions by government, a non legislative deprivation of state created land use rights does not support a substantive due process claim).

[5] *See generally Damn v. Sparkman,* 609 F. Supp 749, 753 (D. Kan. 1985) (*citing Ramos v. Gallo,* 596 F. Supp 833, 837) (D. Mass. 1984) (quotations and citations omitted) (explaining "[a] substantive due process claim, . . . , alleges not that the state's procedures are somehow deficient, but that the state's conduct is inherently impermissible, regardless of any protective or remedial procedures it provides. It is based on the right to be free of state intrusions into realms of

Accordingly, Plaintiffs fail to state a claim against Farmington for a violation of Section 1983.

### 2. Plaintiffs' Fourth Amendment Claim

Next, Plaintiffs assert Farmington engaged in an "unreasonable seizure and demolition of its sign" in violation of the Fourth Amendment. (ECF No. 2, ¶17.) A seizure of property "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook Cnty.,* 506 U.S. 56, 61, 121 L.Ed. 2d 450, 113 S. Ct. 538 (1992) (*quoting United States v. Jacobsen*, 466 U.S. 109, 113, 80 L.Ed. 2d 85, 104 S. Ct. 1652 (1984)). Consideration of an alleged Fourth Amendment violation entails weighing various governmental and private interests and ultimately requires a determination as to the "reasonableness" of the alleged seizure.

In *Santana v. Tulsa*, the Tenth Circuit denied a claim for violation of the Fourth Amendment when a City's abatement action met procedural due process requirements and the Plaintiffs "failed to raise any factual issues that advance[d] a valid claim of unreasonable behavior on the party of the City or its agents." 359 F.3d 1241, 1245 (10th Cir. 2004) (*citing Samuels v. Meriwether,* 94 F.3d 1163, 1168 (8th Cir. 1996)). Here, Plaintiffs do not sufficiently allege that Farmington acted unreasonably. Alternatively, even assuming such a pleading, the record of underlying litigation demonstrates that Farmington provided Plaintiffs with notice and an opportunity to be heard through the course of extended administrative and judicial processes. *See supra* p. 4-5. Farmington only demolished the structure after it received judicial permission

---

personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court."

to do so, and Plaintiffs fail to state a claim for unreasonable interference in violation of the Fourth Amendment.

### 3. Plaintiffs' Fifth Amendment Claim

Plaintiffs third cause of action appears to allege that Farmington took Plaintiffs' property without due process of law in violation of the Fifth and Fourteenth Amendments of the United States Constitution and in violation of Utah's constitutional prohibition on taking or damaging private property for public use. As set forth in the complaint, Plaintiffs only support for this cause of action is an assertion that "[t]here was no hearing or finding by any legal proceeding that determined that the sign structure was per se injurious, obnoxious or a menace to public health or public safety or morals or general welfare." (*Id.*, ¶19). This allegation is directly belied by the record of underlying litigation establishing that the building was indeed "dangerous" even if not accompanied by a more precise definition of that term or clear evidence of imminent harm. Accordingly, Plaintiffs fail to state a properly supported claim for a Fifth Amendment violation.

### 4. Plaintiffs' Claim For Eminent Domain

Plaintiffs final claim entitled "eminent domain" refers to Section 131(g) of the Highway Beautification Act (the "Act') entitled "Control of outdoor advertising" and Utah's Municipal Code Section 10-9a-513(2)(a) entitled "Municipality's Acquisition of Billboard by Eminent Domain." *See* 23 U.S.C. § 131(g); Utah Code Ann. 10-9a-513.

The Act was enacted in 1965 and designed to regulate "outdoor advertising along federalaid highways." *Lamm v. Volpe*, 449 F.2d 1202, 1203 (10th Cir. 1971).

Section 131(g) of the Act provides:

Just compensation shall be paid upon the removal of any outdoor advertising

> sign, display, or device lawfully erected under State law *and not permitted under subsection (c) of this section, whether or not removed pursuant to or because of this section*. The Federal share of such compensation shall be 75 per centum. Such compensation shall be paid for the following:
>
> (A) The taking from the owner of such sign, display, or device of all right, title, leasehold, and interest in such sign, display, or device; and
>
> (B) The taking from the owner of the real property on which the sign, display, or device is located, of the right to erect and maintain such signs, displays, and devices thereon.

*See* 23 U.S.C. § 131(g) (1965) (emphasis added).

Plaintiffs do not plead or provide any support for a claim that the structure was not permitted under subsection (c) of this section or any other section of the Act. (*See generally*, ECF No. 2.)[6] Rather, pursuant to the record of underlying litigation the structure was in violation of the Uniform Building Code for the Abatement of Dangerous Building. As a result, Plaintiffs' fails to establish how the Act is applicable to the facts at hand. Moreover, looking beyond Plaintiffs' pleading deficiency, the Act "creates no federal rights in favor of billboard owners" and, generally does not provide a private cause of action for the type of wrongs that are generally alleged by Plaintiffs. *See National Advertising Co. v. Ashland,* 678 F.2d 106, 109 (9th Cir. 1982) (*citing Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S. Ct. 2614 (1981); *Parks v. Donrey, Inc.,* 565 F. Supp. 347, 350, 1985-1 Trade Cas. (CCH) P66407 (W. D. Ark. 1984) ("23 U.S.C. § 131(g) does not provide for a private right of action for just compensation.")).

Next, Plaintiffs' fourth cause of action cites to Utah's Municipal Code Section 10-9a-513(2)(a) entitled "Municipality's Acquisition of Billboard by Eminent Domain." (ECF No. 2,

---

[6]Subsection (c) of the Act defines and limits "effective control." *See* 23 U.S.C. § 131(c).

¶21.) In part, the Code states:

> (2) (a) A municipality is considered to have initiated the acquisition of a billboard structure by eminent domain if the municipality prevents a billboard owner from:
>
>> (i) rebuilding, maintaining, repairing or restoring a billboard structure that is damaged by casualty, an act of God or vandalism;
>> . . . .
>>
>> (v) making the following modifications, as the billboard owner determines, to a billboard that is structurally modified or upgraded under Subsection 2(a)(iii) or relocated under Subsection (2)(a)(iv):
>>
>>> (A) erecting the billboard:
>>>
>>>> (I) to the highest allowable height; and
>>>>
>>>> (II) as the owner determines, to an angle that makes the entire advertising content of the billboard clearly visible; and
>>>
>>> (B) installing a sign face on the billboard that is at least the same size as, but no larger than the sign face on the billboard before its relocation.

*See* Utah Code Ann. § 10-9a-513(2)(a).

Again, the factual allegations of Plaintiffs' complaint do not support the application of a cognizable claim to these statutory provisions. Plaintiffs make no allegation that Farmington prevented them from rebuilding, maintaining, repairing or restoring any billboard. In turn, there are no allegations that Farmington prevented Plaintiffs from modifying a structure that had been "structurally modified or upgraded under Subsection (2)(a)(iii) or relocated under Subsection (2)(a)(iv)" of the statute. Utah Code Ann. 10-9a-513(2)(a)(v). Even assuming the state municipal code was applicable to the facts of this case, the code actually *allows* a municipality to

remove a billboard without compensation if actual notice is provided and there is substantial evidence to establish the billboard is unsafe, in an unreasonable state of repair or abandoned. *See* Utah Code Ann. 10-9a-513(e)(a)-(d); *see also supra 4-5*, Record of Underlying Litigation.

For these reasons, Plaintiffs fail to state a claim for eminent domain pursuant to the Highway Beautification Act, 23 U.S.C. § 131(g), or Utah's state municipal code Section 10-9a-513(2)(a).

## V. CONCLUSION

Dismissal of a complaint with prejudice is "appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1219 (10th Cir. 2006) (*citing Grossman v. Novell, Inc.,* 120 F.3d 1112, 1126 (10th Cir. 1997)). Plaintiffs' complaint essentially amounts to a collateral attack on extended administrative and judicial processes in Utah's state and appellate courts that culminated in the demolition of Plaintiffs' structure. Under these circumstances and given the facts alleged, the court finds amendment would be futile and for the reasons set forth herein, the court GRANTS Farmington's motion to dismiss Plaintiffs' complaint with prejudice for failure to state a claim upon which relief can be granted.

**IT IS SO ORDERED**.

DATED this 12th day of May, 2016.

_____
Dustin Pead
U.S. Federal Magistrate Judge